IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------x
:
MAX KAPLAN                                            :    3:00 CV 610 (EBB)
:
v.                                                    :
:
MYRNA LEHRER                                          :
:
v.                                                    :
:
RITA LITVACK                                          :    DATE: NOVEMBER 5, 2003
:
------------------------------------------------------x

### RECOMMENDED RULING ON DEFENDANT'S MOTION FOR RECONSIDERATION

The procedural history behind this family litigation is set forth in considerable detail in this Magistrate Judge's Recommended Ruling on Plaintiff's Motion to Substitute and Motion to Open Judgment of Dismissal, filed March 18, 2003 (Dkt. #90)["Recommended Ruling"], familiarity with which is presumed. As discussed in the Recommended Ruling, on October 15, 2002, defendant Lehrer filed a Motion to Dismiss (Dkt. #82), on the basis that plaintiff Kaplan had passed away on September 17, 2002. On November 7, 2002, this Magistrate Judge granted defendant Lehrer's motion, under then Local Rule 9(a)1., and on January 6, 2003, Judge Burns approved the endorsement, no timely objection having been filed.

On January 13, 2003, plaintiff Kaplan filed two motions, Motion to Substitute (Dkt. #85), pursuant to FED. R. CIV. P. 25, to substitute Rita Litvack, Executrix of the Estate of Max Kaplan, as plaintiff, and Motion to Open Judgment of Dismissal (Dkt. #86). The Recommended Ruling granted both motions, in that defendant Lehrer's Motion to Dismiss, filed October 15, 2002, notifying the parties of the death of plaintiff Kaplan, triggered the

ninety-day period of FED. R. CIV. P. 25(a)(1). (Recommended Ruling at 2-3).[1]

On March 26, 2003, defendant Lehrer filed an Objection to Recommended Ruling (Dkt. #91), which Senior U.S. District Judge Ellen Bree Burns construed as a Motion for Reconsideration and referred such motion to this Magistrate Judge on April 17, 2003. (Dkt. #92). On June 11, 2003, plaintiff Litvack filed her brief in opposition. (Dkt. #93). On July 18, 2003 (Dkt. #95), defendant Lehrer filed her reply brief. (Dkt. #95).[2] On August 11, 2003, plaintiff Litvack filed her surreply brief. (Dkt. #97).

For the reasons stated below, defendant Lehrer's Motion for Reconsideration (Dkt. #91) is granted, and the Court now denies plaintiff's Motion to Open Judgment of Dismissal. (Dkt. #86).

## I. DISCUSSION

In her motion, defendant Lehrer asserts that even assuming *arguendo* that plaintiff's January 13, 2003 motions were timely filed under Rule 25(a), such motions were barred under Rule 60(b),[3] because the action already had been dismissed, and plaintiff failed to act first to suspend the operation of the dismissal. (Dkt. #91, at 3-5). In her brief in opposition, plaintiff Litvack observes that the Motion to Open and Motion to Substitute "were filed

---

[1] As the Recommended Ruling observed:

"It would have been prudent for plaintiff to have filed a motion for extension of time, or even an objection to defendant Lehrer's Motion to Dismiss, rather than sit back and do nothing; it would have been prudent for plaintiff to have filed an objection to the November 7, 2002 endorsement as well, rather than sit back and do nothing." (At 3 n.3).

The Recommended Ruling also instructed counsel to contact the Magistrate Judge's Chambers to arrange a continued settlement conference (at 3 n.4); this order also was ignored by both parties.

[2] Attached were copies of court decisions.

[3] Rule 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect[.]"

2

simultaneously" and that "[t]here is no law that takes the position the case must be reopened before a Motion to Substitute can be filed." (Dkt. #93, at 5). Plaintiff Litvack further argues that under CONN. GEN. STAT. § 52-599, "there is nobody to seek to open the judgment" until "a representative is substituted." (Id. at 5-6). Plaintiff Litvack further explained that she "promptly" moved to be appointed Executrix in the Surrogates Court of the New York Supreme Court but that defendant Lehrer contested the will and her appointment; after defendant Lehrer ultimately withdrew her objections, plaintiff Litvack was appointed as Executrix and received her letters of appointment in late November 2002. (Id. at 2). Further delays apparently ensued when discussions were held whether plaintiff Litvack would be represented by her late father's attorney or her own private counsel. (Id.). She candidly acknowledged that as a third-party defendant in this action, "[s]he had no independent reason to want the case reopened." (Id. at 3).

In her reply brief (Dkt. #95), defendant Lehrer argues that plaintiff Litvack's brief in opposition was untimely (at 2). She also claims that plaintiff Litvack has failed to show an entitlement to relief under Rule 60(b) because she failed to prove "mistake, inadvertence or excusable neglect," in that she did not need to wait for her appointment as Executrix in order to move for substitution, and the claimed uncertainty over representation is "simply a red herring," particularly in the absence of an affidavit from plaintiff Litvack and the failure of Mr. Kaplan's attorney to file any objection or motion (at 2-6). Lastly, she calls plaintiff Litvack's alleged lack of interest in reopening this case "curious," describes plaintiff Litvack's failure to file a timely objection to this Magistrate Judge's November 2002 ruling as a "purposeful decision," contends that CONN. GEN. STAT. § 52-599 "has no bearing here," and argues that plaintiff Litvack fails to meet the "hard line" created by the Second Circuit in applying Rule 60(b)(at 6-9). Plaintiff Litvack's surreply brief largely repeats the arguments made in her

3

original brief in opposition. (Dkt. #97).

As plaintiff Litvack properly has observed, the Motion to Open and Motion to Substitute were filed simultaneously on January 13, 2003. The sole issue presented here, then, is whether the Recommended Ruling improperly granted the Motion to Open under Rule 60(b)(1) due to plaintiff Litvack's failure to demonstrate "mistake, inadvertence . . . or excusable neglect."

As the Recommended Ruling noted, while defendant Lehrer's Motion to Dismiss (Dkt. #82) was pending, from October 15, 2002 through November 7, 2002, "[i]t would have been prudent for plaintiff to have filed a motion for extension of time." (At 3 n.3). As the Magistrate Judge explained in Jones Inlet Marina, Inc. v. Inglima, 204 F.R.D. 238, 239 (E.D.N.Y. 2001), "[n]otwithstanding the mandatory language in Rule 25(a), the district court has considerable discretion in addressing the timing of substitution in the event of the death of a party." (citations omitted). As in this case, in Jones Inlet Marina, there was a gap of time between the death of a defendant and the appointment of his administrator. Id. The Magistrate Judge advised defense counsel to file a motion for extension of time under Rule 6(b): "If there is an inability or significant difficulty in identifying [defendant's] legal representative or successor, a motion may be brought under Rule 6(b) to enlarge the time in which to file the motion for substitution beyond the 93 day time period [of Rule 25(a)]." Id. at 240 (citations omitted).

Similarly, it would have been prudent for plaintiff to have filed an after-the fact motion for extension of time under Rule 6(b)(2), immediately after plaintiff Litvack's appointment in late November 2002. As this Magistrate Judge summarized in George v. United States, 208 F.R.D. 29, 32 (D. Conn. 2001):

Rules 6(b)(2) and 25(a)(1) work together to provide flexibility in enlarging the

4

> time for substitution. . . . Rule 25 makes clear that the 90 day period was not intended to act as a bar to otherwise meritorious actions. Rule 25(a)(1)'s underlying purpose is to allow flexibility in substitution. To accomplish this flexibility, Rule 25(a)(1) should be liberally interpreted.

(multiple citations & internal quotations omitted). As one court described, the application of Rules 6(b)(2) and 25(a)(1) provides an "elastic concept" for "excusable neglect." Zeidman v. General Accident Ins. Co., 122 F.R.D. 160, 162 (S.D.N.Y. 1988)(citation omitted).

In George, plaintiff's counsel blamed the four-month delay between her husband's death and her appointment as his executor on the misplacement or loss of financial and other information and documents necessary to complete the Probate Court forms. 208 F.R.D. at 33. Plaintiff filed her Motion for Extension of Time and Motion to Substitute Party four days after receiving the appointment from the Probate Court. Id. Under these circumstances, this Court held that plaintiff had demonstrated "excusable neglect" under Rule 6(b)(2), in that "[t]he delay was not due to inaction on the part of plaintiff's counsel, but instead, on the loss or misplacement of documents necessary to complete the appointment of Mrs. George as executor." Id.

In contrast to the "elastic concept" given to "excusable neglect" under Rules 6(b)(2) and 25(a)(1), the case law developed in the Second Circuit and the District of Connecticut is quite rigid in construing "excusable neglect" under Rule 60(b)(1). What is disturbing is the lack of action, for six weeks, after plaintiff Litvack's appointment in late November 2002 and before her motions, filed on January 13, 2003. (Dkts. ##85-86). Again, plaintiff simply could have filed an after-the-fact Motion for Extension of Time under Rule 6(b)(2), or even an objection to the November 7, 2002 endorsement. (See Recommended Ruling at 3 n.3). Plaintiff Litvack has explained that this delay was occasioned by uncertainty as to which attorney would be representing plaintiff now – whether it would be her own counsel or the

5

attorney who had represented her late father. (Dkt. #93, at 2).

As the Second Circuit held in Nemaizer v. Baker, 793 F.2d 58, 62-63 (2d Cir. 1986):

> Relief from counsel's error is normally sought pursuant to [Rule] 60(b)(1) on the theory that such error constitutes mistake, inadvertence or excusable neglect. But we have consistently declined to relieve a client under subsection (1) of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or other rules of the court, or his inability to efficiently manage his caseload. This is because a person who selects counsel cannot thereafter avoid the consequences of the agent's acts or omissions. Mere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief.
>
> More particularly for our purposes, an attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment. . . .
>
> Moreover, in this context, an attorney's actions, whether arising from neglect, carelessness or inexperience, are attributable to the client, who has a duty to protect his own interests by taking such legal steps as are necessary. To rule otherwise would empty the finality of judgments rule of meaning.

(multiple citations & internal quotations omitted). See also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 387-97 (1993)(in construing "excusable neglect" Bankruptcy Rule 9006(b), which is modeled after Rule 6(b), clients may be held accountable for the acts and omissions of their attorneys.).

These concerns were echoed more recently by Senior U.S. District Judge Alan H. Nevas in Carcello v. TJX Cos., Inc., 192 F.R.D. 61 (D. Conn. 2000), where plaintiff's employment action was dismissed following plaintiff's failure to respond to defendant's motion to dismiss and failure to appear at a pretrial conference. In denying plaintiff's Rule 60(b)(1) motion, Judge Nevas explained:

> Where the order from which relief is sought is the result of counsel's failure to read and obey an unambiguous court rule, counsel's omission is not excusable neglect. Moreover, gross negligence on the part of counsel does

6

not fall within the scope of excusable neglect as defined by Rule 60(b)(1).

Furthermore, a client is not generally excused from the consequences of his attorney's negligence absent extraordinary circumstances.

Id. at 63 (multiple citations and internal quotations omitted). The "serious medical problems" of plaintiff's counsel did not constitute "excusable neglect," particularly where plaintiff's counsel failed to apprise opposing counsel or the Court of the situation, nor did he make alternative arrangements for other attorneys to handle this matter. Id. at 64-65. See also Hartford Steam Boiler Inspection & Ins. Co. v. Southeastern Refractories, Inc., 212 F.R.D. 62 (D. Conn. 2003)(denying plaintiff's Rule 60(b)(1) motion to vacate judgment for defendant, after plaintiff failed to file a brief in opposition to defendant's motion to dismiss, for which plaintiff previously had received two extensions of time).

Therefore, under the standards established in this District and Circuit for determining "excusable neglect" under Rule 60(b)(1), this Magistrate Judge should not have granted plaintiff Litvack's Motion to Open Judgment of Dismissal (Dkt. #86).

## II. CONCLUSION

Accordingly, for the reasons stated above, defendant Lehrer's Motion for Reconsideration (Dkt. #91) is hereby granted, and plaintiff Litvack's Motion to Open Judgment of Dismissal (Dkt. #86) is denied.[4]

See 28 U.S.C. § 636(b)(written objections to ruling must be filed within ten days after service of same); FED. R. CIV. P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d 15, 16 (2d Cir. 1989)(failure to file timely objection to

---

[4]As previously indicated, in the Recommended Ruling, the Magistrate Judge instructed counsel to contact the Magistrate Judge's Chambers to arrange a continued settlement conference (at 3 n.4), but none of the attorneys did so. The Magistrate Judge is still willing to hold such a conference, if either side believes such conference would be productive.

AO 72A
(Rev. 8/82)

Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).

Dated at New Haven, Connecticut, this 5th day of November, 2003.

Joan Glazer Margolis
U.S. Magistrate Judge

8